**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DJENE TRAORE,** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | **Civil Action No. MJM-22-793** |
| | * | |
| **BALTIMORE POLICE DEPARTMENT,** | * | |
| **et al.,** | * | |
| | * | |
| **Defendants** | * | |

\* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On April 2, 2022, plaintiff Djene Traore ("Plaintiff") commenced this civil action against Baltimore Police Department ("BPD") and then-Commissioner Michael Harrison, Robert Quick, Jasmine Riggins-Green, and Amy Guevara (collectively, "Individual Defendants"), in their individual and official capacities. In her Third Amended Complaint, Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.; and 42 U.S.C. §§ 1981 and 1983. Currently pending is Defendants' Motion to Dismiss the Third Amended Complaint or In the Alternative for Summary Judgment (ECF 48, the "Motion"). The Motion is fully briefed. The Court has reviewed the filings and finds that no hearing is necessary. L.R. 105.6. For the reasons stated below, Defendants' Motion will be granted in part and denied in part.

## I.    BACKGROUND

### A.  Procedural Background

The procedural background of this case is detailed in the Memorandum Opinion issued by this Court on December 12, 2023, (ECF 43), in connection with the Order granting Defendants' prior motion to dismiss and dismissing the Second Amended Complaint without prejudice, ECF

44. *See Traore v. Baltimore Police Dep't*, Civ. No. MJM-22-793, 2023 WL 8600553 (D. Md. Dec. 12, 2023). Following entry of that Order, with the Court's leave, Plaintiff filed a Third Amended Complaint ("TAC"). (ECF 45.) Defendants now move to dismiss the TAC for failure to state a claim for relief and, alternatively, for summary judgment. (ECF 48.) Plaintiff filed a response in opposition to the Motion, (ECF 51), and Defendants filed a reply, (ECF 52).

### B. Factual Background

The following facts are derived from Plaintiff's TAC (ECF 45), documents incorporated into the TAC by reference, and public records.[1]

Plaintiff, a Black woman, was employed by BPD as a policy analyst from August 2017 until her termination on April 3, 2019. (TAC ¶¶ 3, 13.) Plaintiff began her employment with BPD in the Best Practices Unit under the supervision of defendant Lieutenant Robert Quick ("Quick"), a white man. (*Id.* ¶ 19.) "The Best Practices Unit worked on high level BPD policy development related to the consent decree BPD entered into with the United States Department of Justice . . . ." (*Id.* ¶ 23.)

Plaintiff alleges that Quick "is a racist" who "used racially inflammatory language in the Best Practices Unit[,] including 'time to get the hose' and 'white man's slavery' [in] describing a post Freddy [*sic*] Gray police department." (*Id.* ¶¶ 20–21.) Quick "often" referred to Plaintiff as "*his* workhorse," which Plaintiff alleges characterized her "as his property." (*Id.* ¶ 21.) Plaintiff informed Quick of her career goals, which included working in BPD's Government Affairs department. (*Id.* ¶ 24.) Quick "promised" that "he would arrange" for her to work part-time in

---

[1] When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must take the factual allegations in the complaint as true, *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016), and consider documents either attached to the complaint as exhibits or incorporated by reference, *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A court may also "take judicial notice of matters of public record" when considering a motion to dismiss. *Corbitt v. Baltimore City Police Dep't*, Civ. No. RDB-20-3431, 2023 WL 3793997, at *3 (D. Md. June 2, 2023).

Government Affairs and help her obtain a position in that department, but also said that BPD only allowed white men to work in Government Affairs. (*Id.* ¶¶ 24–25.) In September 2017, Quick hired a white woman, Lisa Fink, as a policy analyst. (*Id.* ¶ 26.) In late 2017, Plaintiff "pointed out that . . . Quick was giving her less challenging work and treating her differently than . . . Fink." (*Id.* ¶ 27.) Thereafter, Quick's demeanor towards Plaintiff "became cold and he stopped communicating with her." (*Id.* ¶ 28.) Plaintiff alleges Quick did not arrange for her to work in Government Affairs "as previously promised." (*Id.* ¶ 29.)

In or around January 2018, Plaintiff made internal complaints about Quick's "racially discriminatory and retaliatory behavior" to the unit's first line supervisor and to Quick's supervisor, Major Martin Bartness, a white man. (*Id.* ¶ 30.) Plaintiff "also made an internal EEO complaint asserting disparate treatment, hostile work environment, and retaliation against Quick." (*Id.* ¶ 31.) Defendant Jasmine Riggins-Green, a BPD officer and Plaintiff's former co-worker, provided a statement in connection with the investigation of Plaintiff's EEO complaint.  (*Id.* ¶ 32.) Plaintiff told Major Bartness that she did not want to work under Quick's supervision and stated a preference for Government Affairs. (*Id.* ¶¶ 33–34.) Subsequently, Plaintiff was transferred to a "less desirable assignment" with BPD's Professional Development Section to work on employee health and wellness initiatives. (*Id.* ¶¶ 36, 38.) "Whereas her old position involved writing high level BPD policy, [Plaintiff's] new position was more of an event planner role where she was planning wellness fairs and policy writing was a small part of the job duties." (*Id.* ¶ 39.) Unlike the old position, the new position was not located at BPD headquarters. (*Id.*) Major Bartness "promise[d]" Plaintiff that the transfer to Professional Development would be temporary, but Plaintiff "remained in that role" until her termination. (*Id.* ¶ 40.) Neither Major Bartness nor anyone else "ever followed up with her regarding a new, permanent role more inline with her skills

and education level." (*Id.*) Plaintiff "excelled" in the Professional Development Section, where her new supervisors gave Plaintiff the highest ratings on her annual performance evaluation and "sought to reclassify [her] position in order to give her a larger salary and additional responsibilities." (*Id.* ¶¶ 14–18, 41.)

In March 2019, Riggins-Green initiated a complaint to Internal Affairs ("IA") against Plaintiff, and IA investigated the allegations. (*Id.* ¶¶ 47, 49.) The IA complaint and investigation followed a meeting between Riggins-Green and Quick about Plaintiff in early 2019. (*Id.* ¶¶ 42–44.) After this meeting, Plaintiff was informed that Riggins-Green had accessed Plaintiff's personnel file. (*Id.* ¶ 45.) The IA complaint was "riddled with provably false lies[,]" including an allegation that Plaintiff told her background investigators that she had ceased contact with her husband, which was not corroborated during the IA investigation. (*Id.* ¶ 47–48.) Plaintiff's husband, Daryl Taylor, was convicted of first-degree murder and was serving a prison sentence at the time. (ECF 48-5.) Plaintiff had disclosed that her husband was an inmate at a Maryland correctional facility during the employment background investigation BPD conducted before she was hired, but the background investigators were "willfully blind to the exact nature of the relationship" between Plaintiff and her husband in "failing to ask natural follow up questions" in response to Plaintiff's disclosure. (TAC ¶ 46, 50.)

Plaintiff was discharged on April 3, 2019. (*Id.* ¶ 51.) As BPD Human Resources Director, defendant Amy Guevara approved the termination. (*Id.* ¶ 52.) Plaintiff was told that the reasons for her discharge were her failure to disclose her relationship with her husband, actual visits she made with her husband, and her false denial that she visited her husband while he was incarcerated, which BPD claimed were violations of BPD Policy 302. (*Id.* ¶¶ 54–55.) Policy 302 states, in part, "Members will refrain from making personal contacts with persons of questionable character, or

visiting places where known violations of the law are occurring, unless necessary to do so in the performance of their duty." (ECF 48-6 at 3.) Plaintiff contends that, during her hiring process, she did not fail to disclose her relationship with her husband or deny that she visited him and that "BPD has not discharged other employees who have visited family members who are incarcerated." (TAC ¶¶ 54, 56.) The TAC lists several BPD officers who visited incarcerated family members. (*Id.* ¶¶ 57–60.) BPD was aware of, or had been notified about, these visits, but the officers were not discharged for them. (*Id.*) The TAC also lists several individuals who were convicted of murder but whose convictions were determined to be wrongful, thus exonerating them. (*Id.* ¶¶ 107–33.) Mr. Taylor maintains that he was wrongfully convicted and is petitioning for exoneration. (*Id.* ¶¶ 103–06.)

In addition to the alleged Policy 302 violation, BPD claimed that Plaintiff was terminated for "making a false statement during the investigation[,]" which Plaintiff alleges was "based on cheap pop quiz 'gotcha' tactics." (*Id.* ¶ 61.) Plaintiff contends she truthfully "clarified her original answer" during the investigation. (*Id.*)

After Plaintiff's termination, "BPD refused to pay out her accrued but unused comp time and submitted false and incomplete information to Maryland Department of Labor, Division of Unemployment Insurance, which resulted in the initial denial of her application, forced her to file an appeal, and delayed her benefits." (*Id.* ¶ 62.) Guevara "either made or approved of" a false statement made to the Maryland Division of Unemployment Insurance that Plaintiff had originally stated during her pre-hire process that she was not in contact with her husband and would not contact him. (*Id.* ¶ 63.) Plaintiff never said that, and "Guevara had no factual basis to make or approve of such statements." (*Id.*)

In May 2019, Quick directed Riggins-Green "to file a bogus petition for peace order with the court falsely claiming that [Plaintiff] was a threat." (*Id.* ¶ 64.) On May 3, 2019, Riggins-Green filed this petition in the District Court of Maryland for Baltimore City. (*Id.* ¶¶ 65, 77.) Plaintiff contends that the petition was "riddled with lies and half-truths[,]" asserting that Plaintiff was "a risk to the Baltimore City Police Department and to police officers" based on a text message. (*Id.* ¶ 65.) Although the text message was not directed to Riggins-Green, she was a member of the approximately 15-member group of people that received the message. (*Id.* ¶¶ 66–67, 70–71.) As quoted in the peace order petition, the text "used salty language" to impart "allegorical life advice" offered in response to a solicitation from a friend, who was a member of the group that received the text. (*Id.* ¶¶ 67–69.) In the peace order petition, Riggins-Green "took the text message out of context and falsely claimed that it contained a threat to her." (*Id.* ¶ 72.) During the hearing on the petition, Riggins-Green told the court that Guevara, then-Commissioner Harrison, and Quick "all told her to file the peace order petition against the Plaintiff." [2] (*Id.* ¶ 74.)

"In response to" Riggins-Green's filing of the peace order petition, unspecified BPD personnel "spread false rumors about [Plaintiff] claiming that she was a dangerous fugitive and/or a criminal suspect . . . ." (*Id.* ¶ 78.) Among other things, Plaintiff alleges BPD personnel "circulat[ed] [Plaintiff's] photo to security personnel in all of the districts and at City Hall and stat[ed] that she was banned from all City buildings, issu[ed] a 'BOLO' or 'be on the lookout' to all officers representing that [Plaintiff] was a threat to the department, sen[t] sheriffs and detectives to her home and/or the homes of her family members and/or tenants, and ma[de] false and defamatory statements to family members and others asserting that a warrant had been issued for

---

[2] The only place on the peace order petition where the Court has identified Commissioner Harrison's name is in the recitation of facts, where Riggins-Green states she alerted the "local law enforcement agency" regarding her safety concerns, "including Commissioner Michael Harrison in the Baltimore Police Department." (ECF 48-7 at 5.) Harrison is not named as a petitioner.

her arrest." (*Id.*) "The sheriffs came to [Plaintiff's] home and the homes of her family members ready to draw their weapons in response to Riggins-Green's unfounded claims that [Plaintiff] was a risk to police officers." (*Id.*) On May 31, 2019, the peace order proceedings terminated with the state court finding "no statutory basis for the relief BPD was seeking." (*Id.* ¶ 61.)

## II.    LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To survive a 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations" to satisfy Rule 8(a)(2), but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up).

A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert denied*, 566 U.S. 937 (2012).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, courts may "consider documents that are explicitly incorporated into the complaint by reference" or "document[s] submitted by the movant" that are "integral to the complaint[,]" if "there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citations omitted). Additionally, "courts may take judicial notice of publicly available records without converting a motion to dismiss to a

motion for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 502–03 (D. Md. 2019).

If the court otherwise considers matters outside the pleadings pursuant to Fed. R. Civ. P. 12(d), "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). If the court converts the motion to dismiss to a motion for summary judgment in this fashion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*. A court may not convert a motion to dismiss to one for summary judgment *sua sponte* without providing notice to the parties that it will do so. *See Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (noting that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to have notice that conversion under Rule 12(d) may occur, and the court need not "notify parties of the obvious." *Id*.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court shall grant a party's summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). To avoid summary judgment, the non-moving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *see also Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *Gordon v. CIGNA Corp.*, 809 F.3d 463, 470 (4th Cir. 2018).

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2012). However, the non-moving party cannot "complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). "If a party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, the proper course is to file a [Fed. R. Civ. P. 56(d)] affidavit." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). A Rule 56(d) affidavit specifies reasons the non-moving party "cannot present facts essential to justify its opposition" to a summary judgment motion. Fed. R. Civ. P. 56(d). "[F]ailure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Harrods Ltd.*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961).

## III. ANALYSIS

### A. Conversion to a Motion for Summary Judgment

Defendants have styled their Motion as a motion to dismiss under Fed. R. Civ. P. 12(b) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. (ECF 48.) They present for the Court's consideration multiple exhibits. (ECF 48-3 to 48-7.) In response, Plaintiff opposes the Motion and submits a declaration, pursuant to Fed. R. Civ. P. 56(d), establishing the need for discovery of certain materials and information. (ECF 29, 29-1.) Plaintiff articulates a need for discovery of documents and recorded materials related to Plaintiff's pre-hire background investigation and the IA investigation that led to her termination. (ECF 29-1 at 1–2.) She claims she needs to depose the Individual Defendants on matters relating to their involvement in the

10

petition for a peace order that was filed against her, and statements made to the Maryland Division of Unemployment Insurance. (*Id.* at 2–4.)

Given Plaintiff's articulated need for discovery on various factual matters related to her claims, the Court will not convert Defendants' motion to dismiss to a motion for summary judgment. The Court will confine its analysis to whether the claims asserted in the TAC are supported by sufficient factual material to give Defendants fair notice of Plaintiff's claims and to raise Plaintiff's entitlement to relief above the speculative level.

**B. Counts I and IV**

In Count I of the TAC, Plaintiff asserts a claim against BPD for retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"). (TAC ¶¶ 80–84.) Similarly, in Count IV, Plaintiff asserts a claim against the Individual Defendants for retaliation "for complaining about discrimination based on race in the making and enforcement of contracts." (TAC ¶¶ 148–51.) Although these claims are lodged against different defendants and invoke separate legal grounds, they appear to be based on the same facts.

The U.S. Court of Appeals for the Fourth Circuit has recognized that the elements required to establish race discrimination in the workplace are the same under Title VII and 42 U.S.C. § 1981. *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016) ("elements of [Title VII and § 1981] retaliation claims are identical").

At trial in a retaliation case, the plaintiff bears the burden of proving her claims through one of two methods. The plaintiff may offer "direct or indirect" evidence of retaliatory animus under "ordinary principles of proof[,]" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1116 (1997), or follow the burden-shifting framework articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*,

411 U.S. 792, 793 (1973). *See Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021). The Court may consider both methods of proving discrimination when evaluating a plaintiff's allegations under Rule 12(b)(6). The plaintiff, however, need not commit to either of the two approaches at the motion-to-dismiss stage. *Chen v. Md. Dep't of Health & Mental Hygiene*, Civ. No. ELH-15-1796, 2016 WL 4539204, at *17 (D. Md. Aug. 29, 2016).

Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of retaliation. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015). "To establish a prima facie case of retaliation under either [Title VII or § 1981]" requires a showing "(i) that [the plaintiff] engaged in protected activity, (ii) that [her employer] took adverse action against [her], and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." *Guessous*, 828 F.3d at 217 (quoting *Foster*, 787 F.3d at 250). The adverse action must be "materially adverse," that is, sufficient to dissuade a reasonable employee from engaging in protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). It must also impose "some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it." *Ray v. Int'l Paper Co.*, 909 F.3d 661, 670 (4th Cir. 2018) (quoting *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 431 (4th Cir. 2015)).

If the plaintiff "establish[es] a *prima facie* case of retaliation, the burden shifts to the [employer] to articulate a legitimate, non-retaliatory reason for the adverse employment action." *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 407 (4th Cir. 2005). If the employer makes this showing, the plaintiff must demonstrate that the employer's articulated reasons are a mere pretext for retaliation. *Foster*, 787 F.3d at 250 (citation omitted). Ultimately, "Title VII retaliation claims require proof that *the desire to retaliate* was the but-for cause of the challenged employment action." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 900 (4th Cir. 2017) (quoting *Univ. of Tx.*

*Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) (emphasis added).

To survive a motion to dismiss, "a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss . . . ." *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30 (2012) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510–15 (2002)). But she is required to allege sufficient facts to "'state[] a plausible claim for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct'" and "to raise a right to relief above the speculative level . . . ." *Id.* (quoting *Iqbal,* 556 U.S. 662, and *Twombly*, 550 U.S. at 555).

Plaintiff asserts that Defendants retaliated against her for submitting internal discrimination complaints by terminating her employment and subsequently initiating a peace order proceeding against her. (ECF 28 at 17; TAC ¶ 81.) Internal complaints of discrimination are protected activities. *See DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015). However, the TAC fails to plead enough facts to suggest that Plaintiff's discharge and Riggins-Green's peace order petition "occurred because of the protected activity" or that either of these actions "bears sufficient temporal proximity to the protected activity." *Staggers v. Becerra*, Civ. No. ELH-21-0231, 2021 WL 5989212, at *22 (D. Md. Dec. 17, 2021) (citations omitted).

Plaintiff's retaliation claims require a causal relationship between her protected activities and the adverse actions allegedly taken by her employer. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). To plead a causal relationship between her protected activities and the employer's adverse action, a plaintiff may allege facts to "suggest that the adverse action occurred because of the protected activity" or that "the adverse act bears sufficient temporal proximity to the protected activity." *Staggers*, 2021 WL 5989212, at *22 (quoting *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021), and *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x

781, 784 (4th Cir. 2021)) (cleaned up). "A lengthy time lapse between the [defendant's] becoming aware of the protected activity and the alleged adverse . . . action . . . negates any inference that a causal connection exists between the two." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)).

BPD's termination of Plaintiff's employment in April 2019 and subsequent actions all occurred well over a year after her internal complaints of discrimination in January 2018. This gap in time cannot support a reasonable inference of a causal relationship between Plaintiff's protected activities and BPD's alleged adverse actions. *See Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 789–90 (D. Md. 2013) ("The Fourth Circuit has found that a lapse of as little as two months between the protected activity and an adverse employment action is 'sufficiently long so as to weaken significantly the inference of causation.' . . . [And] a three-year lapse between the time when the employer became aware of the protected activity and an adverse employment action was a 'lengthy time lapse' that 'negates any inference that a causal connection exists between the two.'") (quoting *King v. Rumsfeld,* 328 F.3d 145, 151 n.5 (4th Cir. 2003), and *Dowe*, 145 F.3d at 657).

According to the TAC, Plaintiff's termination was preceded by an IA complaint against Plaintiff submitted by Riggins-Green and an IA investigation of Plaintiff's conduct, both of which occurred in March 2019 and concerned Plaintiff's disclosures to BPD about her relationship with her spouse, an incarcerated person. (TAC ¶¶ 47–50.) Plaintiff was advised that "she was discharged for failing to disclose the relationship with her spouse and falsely denying that she had visited him." (*Id.* ¶ 54.) She alleges that Riggins-Green's IA complaint "was riddled with provably false lies" and that the IA investigation "was a complete ruse." (*Id.* ¶¶ 47, 50.) The TAC fails to identify

any causal connection between these events and Plaintiff's complaints of discrimination more than
a year prior.

Plaintiff alleges that Riggins-Green filed the "bogus petition for peace order" on May 3,
2019, "falsely claiming that [Plaintiff] was a threat." (*Id.* ¶¶ 64, 65, 77.) Riggins-Green stated in
the petition that Plaintiff sent her "a threatening text message" on May 1, 2019, "on the heels of"
BPD's termination of Plaintiff's employment, and that Plaintiff was "angry" with Riggins-Green
for reporting her to IA. (ECF 48-7 at 3–4.)[3] Plaintiff further alleges that, during the hearing on the
petition, Riggins-Green told the court that Guevara, Harrison, and Quick all told her to file the
petition against Plaintiff. (*Id.* ¶ 74.) According to the TAC, Guevara, Harrison, Quick, and Riggins-
Green were each aware of Plaintiff's discrimination complaints. (*Id.* ¶¶ 32, 37, 52, 76.) The
foregoing facts are inadequate grounds for a reasonable inference that Plaintiff's discrimination
complaints, more than a year prior, caused or motivated the Individual Defendants' involvement
in filing the peace order petition.

Moreover, the TAC offers no explanation as to how the peace order proceeding impacted
Plaintiff's employment status. *See Ray*, 909 F.3d at 670 (citations omitted) ("[A]lthough an
adverse action need not 'affect the terms and conditions of employment,' . . . there must be 'some
direct or indirect impact on an individual's employment as opposed to harms immaterially related
to it.'").

---

[3]     A copy of the peace order petition is docketed at ECF 48-7. The Court may properly consider this
document without converting Defendants' Motion pursuant to Fed. R. Civ. P. 12(d) because the document
is incorporated into the TAC by reference, is integral to the TAC, and bears stamps indicating authenticity.
*See Goines*, 822 F.3d at 165–66; *Trimble Navigation*, 484 F.3d at 705. Plaintiff does not contest the
authenticity of the exhibit and relies upon it in asserting the legal claims made in the TAC. *See Chesapeake
Bay Found.*, 794 F. Supp. 2d at 611. Moreover, the petition is a public court document and therefore a
matter of public record of which judicial notice may properly be taken. *See Philips v. Pitt Cnty. Mem'l
Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

The TAC fails to state a plausible claim of retaliation under either Title VII or § 1981. Defendants' Motion shall be granted as to the retaliation claims in Counts I and IV.

### C. Count III

In Count III of the TAC, Plaintiff asserts claims against all Defendants for "discrimination based on race in the making and enforcement of contracts." (TAC ¶ 143.) She asserts this claim under 42 U.S.C. § 1983. (*Id.* ¶ 146.)

Section 1983 provides a cause of action against a person who, acting under color of state law, subjects a person within the jurisdiction of the United States to the deprivation of federal rights. 42 U.S.C. § 1983. Section 1981 provides in part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). These rights "are protected against impairment by nongovernmental discrimination and impairment under color of State law[,]" 42 U.S.C. § 1981(c), including by retaliation for opposing race discrimination in employment, *see Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 172 (4th Cir. 2020), *as amended* (Oct. 16, 2020) (quoting *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008)).

A local governmental body may be liable for a deprivation of federal rights "[o]nly in cases where [it] causes the deprivation 'through an official policy or custom' . . . ." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citation omitted); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("[In § 1983], Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) ("To hold a municipality (a local government entity) liable for a constitutional violation under § 1983, the plaintiff must show that the execution of a policy or custom of the municipality caused the

violation."). To prevail on a *Monell* claim, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). The requirement for § 1983 claims against governmental entities "that plaintiffs show an official policy or custom of discrimination also controls in § 1981 actions against [such] entities." *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735–36 (1989)).

Plaintiff bases the claim asserted in Count III on BPD's Policy 302 but fails to allege sufficient facts to show that the execution or enforcement of this policy "proximately caused" any deprivation of her rights under § 1981.

The U.S. Court of Appeals for the Fourth Circuit has recognized that the elements required to establish race discrimination in the workplace are the same under Title VII and 42 U.S.C. §§ 1981 and 1983. *See Love-Lane*, 355 F.3d at 786 ("elements required to establish [race discrimination] are the same under [Title VII and §§ 1981 and 1983]"). Thus, in order to prevail on her § 1981 claim, Plaintiff must allege that her employer took an adverse employment action against her "under circumstances that raise a reasonable inference of unlawful discrimination . . . ." *Gaines v. Baltimore Police Dep't*, 657 F. Supp. 3d 708, 735 (D. Md. 2023) (quoting *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 650 (4th Cir. 2021)).

The TAC contains no such allegations. To the contrary, the TAC identifies several Black BPD officers who visited incarcerated family members without any adverse employment action taken against them. (TAC ¶¶ 56–60.) Specifically, it alleges that these officers notified command staff about their visits and were not fired for them. (*Id.*) These facts do not support a reasonable

inference that the enforcement of Policy 302 against Plaintiff was on account of her race or otherwise discriminatory under § 1981.

In the TAC, Plaintiff contends that Policy 302 "disproportionately affects Black employees and potential applicants through its impermissible targeting of marriages and other familial relationships involving incarcerated persons." (*Id.* ¶ 145.) She offers no facts to support this conclusory allegation. Even if Plaintiff provided factual support for her assertion, she does not allege that the challenged policy *is intended* to impose a disproportionate impact on Black employees. *See Resendiz v. Exxon Mobil Corp.*, 72 F.4th 623, 624 (4th Cir. 2023) ("§ 1981 only protects against intentional discrimination").

In sum, the Court finds Count III inadequate to state a claim for relief under § 1983 for infringement of Plaintiff's rights under § 1981. Defendant's Motion will be granted as to this count, and the count will be dismissed.

### D.  Count II

In Count II of the TAC, Plaintiff asserts claims under 42 U.S.C. § 1983 against all Defendants for violations of federal constitutional rights arising from the termination of Plaintiff's employment. (TAC ¶¶ 85–141.)

"To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a 'person acting under the color of state law.'" *Gaines*, 657 F. Supp. 3d at 748 (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).[4] "A person acts under color of state law only when exercising power possessed by virtue of state law and made possible only because the

---

[4]     "BPD is a 'person' subject to suit under § 1983" and "does not enjoy state sovereign immunity for purposes of a § 1983 claim." *Gaines*, 657 F. Supp. 3d at 749 (citations omitted).

wrongdoer is clothed with the authority of state law." *Id.* (quoting *Polk County v. Dodson*, 454 U.S. 312, 317–18 (1981)) (cleaned up).

Importantly, "[t]here is no respondeat superior liability under § 1983." *Love-Lane*, 355 F.3d at 782 (citing *Monell,* 436 U.S. at 691). As noted in Part III.C *supra*, however, local governmental body may be liable for a deprivation of federal rights "in cases where [it] causes the deprivation 'through an official policy or custom' . . . ." *Lytle*, 326 F.3d at 471 (citation omitted); *see also Monell*, 436 U.S. at 691; *Love-Lane*, 355 F.3d at 782. To prevail on a *Monell* claim, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan*, 15 F.3d at 338.

Here, Count II of the TAC seeks to enforce several distinct federal rights, including rights to marital and familial privacy and association, and equal protection, which she contends were violated by her termination. (TAC ¶¶ 86–90.) Plaintiff also asserts that the policy "used to justify" termination of her employment, BPD Policy 302, is unconstitutionally vague and overbroad, in violation of due process. (TAC ¶¶ 133–136.)

Plaintiff asserts an as-applied vagueness challenge to the enforcement of Policy 302 against her, stating that she was terminated under this policy for "making personal contacts with persons of questionable character, or visiting places where known violations of the law are occurring," by "visiting her husband[,]" but that the policy "does not define the term[s] 'questionable character[,]' . . . 'places[,]' . . . or 'known.'" (TAC ¶¶ 94, 100–02.)

A law or government policy "fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits . . . ." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (quoting *Giaccio v. Pennsylvania,* 382 U.S.

399, 402–403 (1966)). "A statute can be impermissibly vague for either of two independent reasons[:] [1] if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits[;] [2] if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (citing *Morales,* 527 U.S. at 56–57). The vagueness inquiry "is aided by both 'dictionary definitions and old-fashioned common sense.'" *Fusaro v. Howard*, 19 F.4th 357, 371 (4th Cir. 2021) (quoting *Wag More Dogs Liab. Corp. v. Cozart*, 680 F.3d 359, 371 (4th Cir. 2012)).

"The degree of vagueness tolerated in a law depends in part on the type of statute." *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 272 (4th Cir. 2019). For instance, the Supreme Court has "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498–99 (1982) (footnote omitted). In the context of public employment, workplace standards "are not void for vagueness as long as ordinary persons using ordinary common sense would be notified that certain conduct will put them at risk of discharge." *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992) (citing *Arnett v. Kennedy*, 416 U.S. 134, 159 (1974)); s*ee also O'Laughlin v. Palm Beach Cnty.*, 30 F.4th 1045, 1055 (11th Cir. 2022) (adopting *San Filippo* standard). When a statute "interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 19 (2010) (quoting *Vill. of Hoffman Ests.*, 455 U.S. at 499). But "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Id.* (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).

A plaintiff asserting an as-applied challenge to vague statute "must show that the statute in question provided insufficient notice that his or her behavior at issue was prohibited." *Dickerson*

20

*v. Napolitano*, 604 F.3d 732, 745 (2d Cir. 2010) (citing *Farrell v. Burke*, 449 F.3d 470, 490 (2d Cir. 2006)). This standard is objective. *Id.* (citing *Farrell*, 499 F.3d at 483). The question of vagueness as applied to a plaintiff does not turn on "whether the actual plaintiff knew that his or her conduct was prohibited[,]" *Farrell*, 449 F.3d at 483, or "whether [the] plaintiff actually received a warning that alerted him or her to the danger of being held to account for the behavior in question." *Dickerson*, 604 F.3d at 746.

The policy Plaintiff challenges prohibits BPD members "from making personal contacts with persons of questionable character, or visiting places where known violations of the law are occurring, unless necessary to do so in the performance of their duty." (ECF 48-6 at 3.) Plaintiff contends that the undefined terms "questionable character," "places," and "known" render the policy enforced against her impermissibly vague. (TAC ¶¶ 94, 100–02.) Plaintiff was told her employment with BPD was terminated for violating this policy by visiting her incarcerated spouse, failing to disclose her ongoing contact with her spouse to BPD, and falsely denying that she visited him. (*Id.* ¶¶ 54–55.) Plaintiff's spouse, Daryl Taylor, was convicted of first-degree murder and was serving a prison sentence at the time. (*See* ECF 48-5.)

The TAC adds several allegations to bolster Plaintiff's vagueness claim. According to the TAC, Taylor maintains that he was wrongfully convicted. (*Id.* ¶¶ 103–06.). He has been released from prison and is petitioning for his exoneration (*Id.*) In addition, the TAC lists 12 individuals who were convicted of murder in Baltimore but, since 2016 or later, have been exonerated upon determination that their convictions were wrongful. (*Id.* ¶¶ 107–33.) Plaintiff avers that her spouse and the listed exonerated individuals are not of "questionable character." (*Id.*)

Viewing the facts in the light most favorable to Plaintiff, the Court finds the facts outlined in the TAC sufficient to state a plausible claim that the challenged rule in Policy 302 is

unconstitutionally vague as applied to Plaintiff. First, the Court notes that a stringent vagueness test must apply to the challenged rule, given its potential interference with Plaintiff's right to associate with her spouse, whether that interference is direct or indirect. *See Humanitarian L. Project*, 561 U.S. at 19. As the Court recognized in its prior Memorandum Opinion, the concept of "questionable character" is decidedly imprecise. (ECF 43 at 51.) The TAC's long list of individuals initially convicted of murder and later exonerated supports an inference may leave one to reasonably question whether a person convicted of murder and incarcerated for the crime falls within Policy 302's meaning of "persons of questionable character." The challenged rule may plausibly leave a person of ordinary intelligence in Plaintiff's position uncertain as to whether the rule prohibited contact with her spouse. *See Hill*, 530 U.S. at 732 (citation omitted). Plaintiff adequately pleads that, viewed objectively, this rule "provided insufficient notice" that visits with an incarcerated spouse were prohibited. *Dickerson*, 604 F.3d at 745.[5]

Additionally, the Court notes that the TAC adds facts to support the proposition that the challenged rule in Policy 302 has been subject to arbitrary enforcement. *See Hill*, 530 U.S. at 732. The TAC identifies several BPD officers who visited incarcerated family members but were not fired for these visits. (TAC ¶¶ 57–60.) The Court notes that these officers are alleged to have notified command staff of their visits, (*id.*), while BPD took the position that Plaintiff had both failed to disclose her visits with Taylor and had falsely denied visiting him, (*id.* ¶¶ 54–55). Plaintiff disputes BPD's position, however, alleging in the TAC that she disclosed the fact that her husband

---

[5]    In its prior Memorandum Opinion, the Court found that Plaintiff's Second Amended Complaint failed to state a plausible vagueness claim based solely on the largely conclusory and threadbare allegations of vagueness made in the Second Amended Complaint and the face of Policy 302 itself. *See* ECF 43 at 48–53. The Court finds the allegations added in the TAC adequate to raise the factual basis for Plaintiff's as-applied vagueness challenge above the speculative level.

was incarcerated during her background investigation and never denied remaining in contact with him. (*Id.* ¶¶ 50, 54.)

Furthermore, the Court finds the vagueness claim to be related to, and even intertwined with, other claims asserted in Count II of the TAC, including Plaintiff's claims that her termination for violating Policy 302 infringed upon her fundamental rights of marital and familial privacy and association and her rights to equal protection. Given how closely related these claims are to Plaintiff's vagueness claim, which this Court finds to be plausible, it would not be appropriate to dismiss the other claims asserted in Count II.

The Court will, however, dismiss the claims asserted against the Individual Defendants in Count II of the TAC. Count II is asserted against all Defendants, including each Individual Defendant in both her or his individual and official capacities. First, a *Monell* claim asserted against a municipality under § 1983 "cannot lie against a municipal official sued in his individual capacity." *Grim v. Baltimore Police Dep't*, Civ. No. ELH-18-3864, 2019 WL 5865561, at *16 (D. Md. Nov. 8, 2019) (citations omitted). Second, any claims asserted against the Individual Defendants in their official capacities "is tantamount to a suit against the BPD." *Id.* at *15; *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)). Because Plaintiff also sued BPD in this action, her official-capacity claims are redundant and therefore appropriately dismissed. *Grim*, 2019 WL 5865561, at *15.[6]

---

[6]     Defendants argue that the Plaintiff's claim for punitive damages should be dismissed. (ECF 48-1 at 30–31; ECF 52 at 10.) Plaintiff did not respond to this argument. The Court agrees with Defendants. "[A] municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Moreover, "[p]unitive damages for violations of § 1983 are available only when the defendant's conduct is shown to be motivated by 'evil motive or intent' or when it involves 'reckless or callous indifference to the federally protected rights of others.'" *Does 1-22 v. Bd. of Educ. of Prince George's Cnty.*, 644 F. Supp. 3d 149, 162 (D. Md. 2022) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). The TAC does not contain any allegations to suggest any evil motive or intent, nor reckless or

## IV.    CONCLUSION

For the reasons stated herein, Defendants' Motion will be granted in part and denied in part. The Motion will be granted as to Counts I, III, and IV of the Third Amended Complaint, which shall be dismissed with prejudice. The Motion shall be denied as to Count II, except that the claims against the Individual Defendants shall be dismissed. Plaintiff's prayer for punitive damages will also be dismissed.

A separate Order will issue.


Date: September 30, 2024                             _____/S/_____

                                                    Matthew J. Maddox
                                                    United States District Judge

---

callous indifference to federal rights, on part of BPD. Accordingly, Plaintiff's claim for punitive damages shall be dismissed.